IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSE L. SANCHEZ, # R-64344, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 12-cv-49-MJR |
| | ) |
| S.A. GODINEZ, D. REDNOUR, | ) |
| SHERRY BENTON, J. DURHAM, | ) |
| D. WESTERMAN, SGT. HASEMEYER, | ) |
| C/O PHELPS, and C/O A. HOOD, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

REAGAN, District Judge:

Plaintiff Jose L. Sanchez, an inmate at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.

1

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**<u>The Complaint</u>**

Plaintiff alleges that on March 4, 2011, he fought with his cellmate at Menard, Inmate Pace (Doc. 1, p. 6). Following the fight, Plaintiff was moved to a new cell on the same gallery. *Id.* Nevertheless, on that same day (March 4), Inmate Pace threatened to beat and kill Plaintiff or have Inmate Basemore beat and kill Plaintiff. *Id.*

2

Later in the day, Plaintiff submitted a request for protection to Internal Affairs concerning Inmate Pace's threat, but he received no response (Doc. 1-1, p. 1). Throughout March 2011, Plaintiff contacted Defendants Rednour, Benton and Godinez, similarly reporting the threat and requesting protection, but Plaintiff received no responses (Doc. 1-1, pp. 2-4).

On April 8, 2011, Defendant Hood took Plaintiff to his building's segregation yard, where Plaintiff asked to speak with Defendant Westerman (Doc. 1, p. 7). Defendant Hood refused Plaintiff's request, but Plaintiff called Defendant Westerman over and expressed concerns about being placed in the same segregation yard as Inmate Basemore, because of the threat against him. *Id.* Defendant Westerman told Plaintiff, "be a man[.]  [G]et your ass in there," and then "shoved" Plaintiff into the caged segregation yard. *Id.* Plaintiff then implored Defendant Durham, who was standing next to Defendant Westerman, to do something, to which Defendant Durham responded, "you heard my Lieutenant, be a man." *Id.* While in the yard, Plaintiff was assaulted by Inmate Basemore and suffered a fracture of his nose (Doc. 1, p. 8; Doc. 1-1, pp. 6, 9).

While Plaintiff was being treated in the Menard Health Care Unit, Defendant Hasemeyer showed Plaintiff a note that had been intercepted suggesting "a hit was put out on Plaintiff" (Doc. 1, p. 8). In a later interview with Defendant Hasemeyer (on September 9, 2009), Plaintiff discovered that this note was intercepted prior to April 8, 2011 (Doc. 1, p. 11). On July 26, 2011, Plaintiff received a note containing an anonymous death threat (Doc. 1, p. 9). A day later (July 27), Plaintiff sent in another request for protective custody. *Id.* Subsequently, Plaintiff was told by

3

Defendant Phelps that the "hit" put out on Plaintiff should be over with since Plaintiff was already beat up on April 8, 2011 (Doc. 1, p. 10). On August 4, 2011, Plaintiff was again denied protective custody. *Id.*

Plaintiff requests an injunction placing him in protective custody and forcing Defendants to provide proper medical care and treatment. Plaintiff also seeks compensatory and punitive damages (Doc. 1, pp. 12-13).

## Discussion

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into three (3) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 – Failure to Protect**

Plaintiff claims that all Defendants showed deliberate indifference to his safety by refusing to place him in protective custody prior to the April 8, 2011, assault on him by Inmate Basemore. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). However, not all harms caused by another inmate translate into constitutional liability for the corrections officers responsible for the prisoner's safety. *Farmer,* 511 U.S. at 834. In order for a plaintiff to succeed on a failure to protect claim, he must show he was incarcerated under conditions posing a substantial risk of serious harm, and the defendants acted with "deliberate indifference"

4

to that danger. *Id.*; *Pinkston*, 440 F.3d at 889.  A plaintiff also must prove prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir. 1996).

When a plaintiff has been attacked by another inmate, if he is to succeed on a failure to protect claim, he must show the defendants knew there was a substantial risk that those who attacked plaintiff would do so, yet failed to take any action. *See Sanville v. McCaughtry,* 266 F.3d 724, 733-34 (7th Cir. 2001).  However, conduct that amounts to negligence or inadvertence is not enough to state a claim. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006) (discussing *Watts v. Laurent*, 774 F.2d 168, 172 (7th Cir. 1985)).

> A prisoner's interest in safety does not lead to absolute liability, however, any more than the state is the insurer of medical care for prisoners . . . . [T]he eighth amendment has a mental component.  The eighth amendment addresses only punishment.  Whether an injury inflicted by fellow prisoners . . . is "punishment" depends on the mental state of those who cause or fail to prevent it. . . .  Other mental states, including total indifference to risks, come so close to deliberateness that courts treat them alike.  Thus judges speak . . . of "deliberate indifference" or "recklessness" as the functional equivalent of intent.  Although there are shadings of meaning here, total unconcern for a prisoner's welfare – coupled with serious risks – is the functional equivalent of wanting harm to come to the prisoner.

*McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991).

In the instant case, Plaintiff was attacked by Inmate Basemore following a threat by Inmate Pace.  The circumstances of the fight tend to indicate Plaintiff's attacker was carrying out the threat made by Inmate Pace, as they were both alleged members of the "Folks" gang (Doc. 1, p. 6).  The operative inquiry at this stage, then, is

5

which Defendants (if any) knew of the specific threat to Plaintiff's safety but failed to take any action to protect him.

Plaintiff has alleged sufficient facts to state a claim that Defendants Durham, Westerman and Hasemeyer were aware of a specific threat to Plaintiff's safety and deliberately refused to protect him.  Defendants Durham and Westerman's statements made on April 8, 2011, indicate deliberate indifference towards the risk of Inmate Basemore assaulting Plaintiff.  Additionally, Defendant Hasemeyer allegedly knew of a note specifically putting a hit on Plaintiff prior to the April 8, 2011, altercation. Defendant Hasemeyer's failure to corroborate this note, combined with the numerous requests for protective custody sent by Plaintiff, could lead a factfinder to infer that Hasemeyer was acting out of deliberate indifference.  Thus, Defendants Durham, Westerman and Hasemeyer cannot be dismissed at this time.

As to Defendants Phelps and Hood, Plaintiff has not alleged any facts that would suggest they had knowledge of the threats to Plaintiff prior to his fight with Inmate Basemore.  The failure to act without knowledge of a specific threat does not state a claim for an Eighth Amendment violation.  Defendant Hood's denial of Plaintiff's request to speak with Defendant Westerman does not amount to an Eighth Amendment claim, and neither does Defendant Phelps's subsequent inquiry into the events of April 8, 2011.  Therefore, Defendants Phelps and Hood shall be dismissed, with prejudice.

Plaintiff asserts that since Defendants Godinez, Rednour and Benton were notified of Plaintiff's concerns leading up to the April 8 assault, they are liable for violating his Eighth Amendment rights.  Godinez is the Director of the Department of Corrections; Rednour is warden of Menard; and Benton is chair of the Administrative

Review Board. Despite their respective supervisory roles, the doctrine of respondeat superior does not apply to § 1983 actions; in order to be liable a defendant must be alleged to be personally responsible for the constitutional violation. *See Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Where a defendant has been alleged to have directed the conduct or to have given knowing consent to the conduct which caused the constitutional violation, that defendant has sufficient personal involvement to be responsible for the violation, even though that defendant has not participated directly in the violation. *Chavez*, 251 F.3d at 652; *McPhaul v. Bd. of Comm'rs of Madison Cnty.*, 226 F.3d 558, 566 (7th Cir. 2000). A defendant in a supervisory capacity may then be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his/her subordinates. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (discussing *Chavez*, 251 F.3d at 651 ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")).

Plaintiff's letter to Rednour specifies that either Pace or Basemore would beat or kill him, and that they were all still housed on the same gallery, so he needed protection (Doc. 1-1, p. 2). The emergency grievance sent to Benton conveys the same information (Doc. 1-1, p. 3). Plaintiff's letter to Director Godinez indicates that Pace and Basemore would beat or kill Plaintiff, although the fact that the three are housed on the same gallery is not mentioned (Doc. 1-1, p. 4). All three communications from Plaintiff also relay that he had sought assistance from other prison officials, all to no avail. Therefore, at this point, the Court will not foreclose the possibility of establishing liability

based upon "turning a blind eye," although that theory of liability seems quite tenuous. Similarly, Plaintiff's allegations and the supporting documentation suffice at this stage to make out a viable claim that these three Defendants had notice of a threat of serious harm to Plaintiff, and they did nothing to abate it. Accordingly, the failure to protect claim against Defendants Godinez, Rednour, and Benton shall proceed.

**Count 2 – Due Process**

Plaintiff claims that all Defendants were responsible for violating his procedural due process rights by ignoring or denying his repeated grievances and complaints. As a claim separate from his "failure to protect" claim, this claim is not grounded in existing law. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011); *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Plaintiff has failed to allege any constitutional violation recognized by existing law, and this claim is accordingly dismissed with prejudice as frivolous.

**Count 3 – Denial of Protective Custody (Prospective Injunctive Relief)**

In addition to his civil rights claims, Plaintiff requests a permanent injunction that would place him in protective segregation. In *Farmer,* the Supreme Court indicated injunctive relief would be an appropriate remedy for a prisoner who received a credible threat of attack by another inmate. *Farmer v. Brennan*, 511 U.S. at 850-51 (district court on remand should address whether injunction would be appropriate based

on evidence to be adduced regarding the likelihood of transsexual inmate's transfer to a setting where he could face greater threat).

"Before a court may award permanent injunctive relief, a party must demonstrate (1) it has succeeded on the merits; (2) no adequate remedy at law exists; (3) the moving party will suffer irreparable harm without injunctive relief; (4) the irreparable harm suffered without injunctive relief outweighs the irreparable harm the nonprevailing party will suffer if the injunction is granted; and (5) the injunction will not harm the public interest." *Old Republic Ins. Co. v. Emp'rs Reinsurance Corp.,* 144 F.3d 1077, 1081 (7th Cir. 1998) (citing *Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 546 n. 12 (1987)) (additional citations omitted).

At this stage of the litigation, the Court is unable to accurately determine whether Plaintiff will be able to succeed on the merits or be able to meet the other criteria he must show to obtain the permanent injunction he seeks.  Plaintiff has allegedly received at least one anonymous death threat since the April 8, 2011, assault.  Since receiving that threat, protective custody has again been denied.  Therefore, it would be inappropriate to dismiss his request for injunctive relief at this stage, and this claim shall receive further review.

Because injunctive relief remains a viable remedy, the Court observes that the proper defendants for injunctive relief are the supervisory officials of the relevant government agency, sued in their official capacities.  *See Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989).  Thus, Defendants Phelps and Hood, who are merely correctional officers, and who are dismissed from Counts 1 and 2, are clearly not proper defendants to Count 3.  Consequently, Phelps and Hood may be dismissed from this action in all

9

respects. At this point in the litigation, the Court will not delve further into who else among the multiple defendants is a proper defendant for purposes of injunctive relief.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 2** is frivolous and thus is **DISMISSED** with prejudice. **DEFENDANTS PHELPS** and **HOOD** are dismissed with prejudice from this action. **COUNTS 1** and **3** shall proceed.

**IT IS FURTHER ORDERED** that the Clerk of Court shall prepare for Defendants **DURHAM**, **WESTERMAN**, **GODINEZ**, **REDNOUR**, **BENTON** and **HASEMEYER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendants fail to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendants, and the Court will require Defendants to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if the Defendants cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendants' current work address, or, if not known, the Defendants' last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings.

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action

11

shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 9, 2012**

                                                s/ MICHAEL J. REAGAN
                                                Michael J. Reagan
                                                United States District Judge